❑ Original ❑ Duplicate Original

# UNITED STATES DISTRICT COURT
### for the
### Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of | ) | |
| *(Briefly describe the property to be searched* | ) | |
| *or identify the person by name and address)* | ) | Case No. 23-890M(NJ) |
| information associated with the cellular telephone assigned call numbers: 414-788-9051 and 414-397-2342. These records are stored at premises-controlled T-Mobile Wireless ("Service Provider") a wireless telephone service provider headquartered in Bellevue, Washington and Overland Park, Kansas. | ) ) ) ) | |

## WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

To: Any authorized law enforcement officer

An application by a federal law enforcement officer or an attorney for the government requests the search and seizure of the following person or property located in the _____ District of _____
*(identify the person or describe the property to be searched and give its location)*:

See Attachment A

I find that the affidavit(s), or any recorded testimony, establish probable cause to search and seize the person or property described above, and that such search will reveal *(identify the person or describe the property to be seized)*:

See Attachment B

**YOU ARE COMMANDED** to execute this warrant on or before 5/2/2023_____ *(not to exceed 14 days)*
❑ in the daytime 6:00 a.m. to 10:00 p.m.    xx❑ at any time in the day or night because good cause has been established.

Unless delayed notice is authorized below, you must give a copy of the warrant and a receipt for the property taken to the person from whom, or from whose premises, the property was taken, or leave the copy and receipt at the place where the property was taken.

The officer executing this warrant, or an officer present during the execution of the warrant, must prepare an inventory as required by law and promptly return this warrant and inventory to _____ Honorable Nancy Joseph _____ .
*(United States Magistrate Judge)*

❑ Pursuant to 18 U.S.C. § 3103a(b), I find that immediate notification may have an adverse result listed in 18 U.S.C. § 2705 (except for delay of trial), and authorize the officer executing this warrant to delay notice to the person who, or whose property, will be searched or seized *(check the appropriate box)*
❑ for _____ days *(not to exceed 30)*   ❑ until, the facts justifying, the later specific date of _____ .

Date and time issued: 4/18/2023 @ 8:47 a.m. _____

*Judge's signature*

City and state: Milwaukee, WI _____    Honorable Nancy Joseph, US Magistrate Judge
*Printed name and title*

## Return

| Case No.: | Date and time warrant executed: | Copy of warrant and inventory left with: |
|---|---|---|

Inventory made in the presence of :

Inventory of the property taken and name(s) of any person(s) seized:

## Certification

      I declare under penalty of perjury that this inventory is correct and was returned along with the original warrant to the designated judge.

Date: _____

_____
*Executing officer's signature*

_____
*Printed name and title*

## **ATTACHMENT A**

### **Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call numbers: (the "Target Cell Phone"): 414-788-9051 and 414-397-2342. These records are stored at premises-controlled T-Mobile Wireless ("Service Provider") a wireless telephone service provider headquartered in Bellevue, Washington and Overland Park, Kansas.

## ATTACHMENT B

### Particular Things to be Seized

#### I.      Information To Be Disclosed by the Provider

For the time period from January 1, 2023 to March 14, 2023, the Provider is required to disclose the following records and other information, if available, to the United States for the Account listed Attachment A:

**A.      Subscriber Information and Call Detail Records:**  The following information about the customers or subscribers of the Account listed Attachment A:

1.      Subscriber/customer names (including usernames and screen names);

2.      Subscriber/customer addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3.      Local and long-distance call detail and tolls records for the Account;

4.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5.      Length of service (including start date) and types of service utilized;

6.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

7.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8.      Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B.** **Cell-Site/Tower Records:** All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account listed in Attachment A, including:

1. Records of user activity for each connection made to or from the Account, including log files; text messaging logs; the date, time, length, and method of connections; data transfer volume; usernames; and source and destination Internet Protocol addresses (IPV6 data records);

2. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as the source and destination telephone numbers, email addresses, and IP addresses); and

3. All data regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received;

4. All historical GPS or other precision location information associated with the Account listed in Attachment A, including Per Call Measurement Data (PCMD), Range to Tower/Real-Time Tool (RTT) data, NELOS records, and Timing Advance Data (TrueCall)).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of the violation of federal law, including, Title 21 U.S.C. § 841(a)(1) (distribute a controlled substances), Title 18 U.S.C. § 844(h) (use of fire in furtherance of a federal felony) and Title 18 U.S.C. § 844(n) (conspiracy to use fire in furtherance of a federal felony) and Title 18 United State Code Section 1512(c)(2) (statements meant to obstruct, influence or impede an investigation being conducted by the ATF).

# UNITED STATES DISTRICT COURT

for the

Eastern District of Wisconsin

| | | |
|---|---|---|
| In the Matter of the Search of<br>*(Briefly describe the property to be searched*<br>*or identify the person by name and address)*<br><br>information associated with the cellular telephone assigned call numbers:<br>414-788-9051 and 414-397-2342. These records are stored at premises-controlled<br>T-Mobile Wireless ("Service Provider") a wireless telephone service provider<br>headquartered in Bellevue, Washington and Overland Park, Kansas. | )<br>)<br>)<br>)<br>)<br>)<br>) | Case No.23-890M(NJ) |

## APPLICATION FOR A WARRANT BY TELEPHONE OR OTHER RELIABLE ELECTRONIC MEANS

I, a federal law enforcement officer or an attorney for the government, request a search warrant and state under penalty of perjury that I have reason to believe that on the following person or property *(identify the person or describe the property to be searched and give its location)*:

See Attachment A

located in the _____ District of _____ , there is now concealed *(identify the person or describe the property to be seized)*:

See Attachment B

The basis for the search under Fed. R. Crim. P. 41(c) is *(check one or more)*:

☑ evidence of a crime;

☐ contraband, fruits of crime, or other items illegally possessed;

☐ property designed for use, intended for use, or used in committing a crime;

☐ a person to be arrested or a person who is unlawfully restrained.

The search is related to a violation of:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 2119 | Carjacking |
| 18 U.S.C. 924(c) | Use of a firearm during the commission of a violent crime |
| 18 U.S.C. 844(i) | Use of fire to damage property affecting interstate commerece |

The application is based on these facts:

See attached affidavit

☑ Continued on the attached sheet.

☐ Delayed notice of _____ days *(give exact ending date if more than 30 days:* _____ *)* is requested under
18 U.S.C. § 3103a, the basis of which is set forth on the attached sheet.

*Rick Hankins*

Digitally signed by RICKY HANKINS
DN: c=US, o=U.S. Government, ou=Dept
of Justice, ou=ATF, cn=RICKY HANKINS,
9.0.2342.19200300.100.1.1=1500100169
9456
Date: 2023.04.12 09:27:56 -05'00'

*Applicant's signature*

Rick Hankins, Special Agent, ATF

*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by

telephone *(specify reliable electronic means)*.

Date:4/18/2023

*Judge's signature*

City and state:  Milwaukee, WI

Honorable Nancy Joseph, US Magistrate Judge

*Printed name and title*

<strong>AFFIDAVIT IN SUPPORT OF<br>AN APPLICATION FOR A SEARCH WARRANT</strong>

I, Rick Hankins, being first duly sworn, hereby depose and state as follows:

<strong><u>INTRODUCTION AND AGENT BACKGROUND</u></strong>

1.      I make this affidavit in support of an application for a search warrant for records and information associated with the following cellular telephone number (the "Target Cell Phones"): **414-788-9051 and 414-397-2342**. These records are stored at premises controlled by T-Mobile ("Service Provider") a wireless telephone service provider headquartered in both Bellevue, Washington and Overland Park, Kansas, also described in Attachment A.   The information to be searched is described in the following paragraphs and in Attachment B.

2.      This affidavit is made in support of an application for a search warrant under 18 U.S.C. § 2703(c)(1)(A) to require the Provider to disclose to the government subscriber/call detail information and historical location data (including cell-site data) maintained by the Provider as further described in Attachment B.  Upon receipt of the information described in Section I of Attachment B, government-authorized persons will review the information to locate items described in Section II of Attachment B.

3.      I am a Special Agent of the U.S. Department of Justice's ATF, currently assigned to the Milwaukee Field Office. I have been so employed since April 2003. My duties as a Special Agent with the ATF include investigating alleged violations of the federal firearms, explosives, and arson statutes.

4.      I have completed approximately 26 weeks of training at the Federal Law Enforcement Training Center in Glynco, Georgia, as well as the ATF National Academy.  That training included various legal courses related to constitutional law as well as search and seizure

authority. Additionally, I have received training on how to conduct various tasks associated with criminal investigations, such as interviewing, surveillance, and evidence collection.

5.     In addition to my duties as a criminal investigator, I am also an ATF Certified Fire Investigator (CFI). As an ATF CFI, I am tasked with providing expert opinions as to the origin and cause of fires. I obtained the ATF CFI certification in 2009 following a two-year training program that centered on various fire science topics including, but not limited to: chemistry, fire dynamics, and building construction. The two-year ATF CFI certification program consisted of college courses, written exams, research papers, reading assignments, practical training exercises, and test burns of various materials. I am re-certified annually as an ATF CFI. To date, I have participated in over 295 fire scene examinations and have testified as an expert. Additionally, I have been certified as a fire investigator by the International Association of Arson Investigators since June 2011. I have received over 1,550 class hours of fire-related training. Furthermore, I have been an instructor regarding fire-related topics on multiple occasions for the following agencies and institutions: The National Fire Academy (FEMA), International Association of Arson Investigators Chapter 25, Waukesha County Technical College, and Blackhawk Technical College. I have also participated in over 223 live fire training exercises, where I started training fires and observed fire growth and development. Finally, I was a full-time instructor at the ATF National Academy from approximately August 2015 to August 2016, where I taught several topics during Special Agent Basic Training for new ATF recruits. Specifically, I was a primary instructor for the arson block of training at the ATF Academy.

6.     I have previously applied for and received search warrants related to cell site data and other related cellphone company records.

7.     This affidavit is based upon my personal knowledge as well as information provided to me by other federal, state, and local law enforcement officers during the course of their official duties, all of whom I believe to be truthful and reliable. This affidavit is also based upon information gathered from interviews of citizen witnesses, reports, official records, law enforcement reports, and my training and experience.

8.     Through my experience and training as a firearm and arson investigator, I am aware that electronic devices, such as cellphones, can be used to store and save audio, video, and text files that can link to a variety of criminal activity. I am also aware that smart cellphones are capable of capturing location history for the device.

9.     Through my experience and training as a firearm and arson investigator, I am aware that electronic devices, such as cellphones, can be used to store and save audio, video, and text files that can link to a variety of criminal activity. I am also aware that smart cellphones are capable of capturing location history for the device.

10.    Based on the facts set forth in this affidavit, there is probable cause to believe that violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) have been committed.  There is also probable cause to search the information described in Attachment A for evidence of these crimes as further described in Attachment B.

**PROBABLE CAUSE**

11.    On February 19, 2023, at approximately 5:43AM, the Milwaukee Police Department responded to a shooting near 1727 West Mineral Street, Milwaukee, Wisconsin **("Location 1")**.  Upon their arrival, police subsequently located A.A., who had been shot

multiple times. A.A. was found lying on the front porch of XXXX South 18th Street and transported to a hospital.

12. The Milwaukee Police Department later interviewed A.A. who stated he and his friend, C.B., were at Potawatomi Casino and then went to a party near South 34th Street and West Pierce Street in Milwaukee **("Location 2")**. A.A. said he was driving a Chrysler 300 car that had been rented by his brother, who was later identified as M.A.. As he and C.B. left the party and were walking to the Chrysler 300, A.A. said they were approached by 5 unknown black males wearing ski masks and carrying firearms. A.A. stated he was struck multiple times in the head by the suspects' firearms while the suspects demanded to know where "the money was." A.A. stated he told the suspects he did not know what they were talking about. A.A. further said the suspects went through his pockets and took his money, necklace, grills, cellphone [phone # (262) 283-2021], and keys to the Chrysler 300 rental car. A.A. said he and C.B. were then forced at gunpoint into the suspects' white SUV. A.A. stated the suspects drove him and C.B. to C.B.'s address after C.B. provided his address. A.A. said the suspects exited the SUV at one point, at which time he exited the SUV and attempted to run away. A.A. stated he heard multiple gunshots and was struck multiple times in his leg, ankle, and foot. A.A. believed C.B. was targeted for the robbery because C.B. has posted social media videos in which C.B. had flashed a lot of money.

13. The Milwaukee Police Department also interviewed C.B, who was located at his residence - XXXX West Mineral Street. C.B. stated he posted a message on Facebook on February 18, 2023, asking if anyone wanted to go out. C.B. said he received a phone call from A.A., who he has known since high school. C.B. stated he and A.A. made plans to go out together. C.B. said A.A. picked him up in a 4-door Chrysler rental car. C.B. stated he, A.A., and

their friend "Michael" first went to Element Nightclub in downtown Milwaukee and then to Potawatomi Casino. While at the casino, C.B. stated he received a phone call from a female he knew as "Pat" who invited him to a party near South 34th Street and West Pierce Street in Milwaukee. C.B. further said he is friends with "Pat" on social media. C.B. stated he and A.A. dropped Michael at home before going to the party. C.B. said he and A.A. stayed at the party for approximately 45-60 minutes and then left. As they were approaching A.A.'s Chrysler rental car, C.B. said two unknown vehicles stopped by them and five unknown male suspects (suspects) exited one of the vehicles. All five were wearing masks. C.B. further said the masked suspects pointed firearms at C.B. and A.A. and C.B. was struck in the head with firearms prior to being forced into the suspect vehicle. C.B. said the suspects went through his pockets and took $200 cash and his Apple iPhone [number (414) 759-7872]. C.B. said the suspects asked where they lived and C.B. provided his home address – XXXX West Mineral Street. C.B. further said A.A. fled the vehicle when they arrived at his address, so he also fled from the vehicle, ran into XXXX West Mineral Street, and did not come out until police arrived.

14.     The Milwaukee Police Department recovered (24) 9mm ammunition casings from the shooting scene near 1727 West Mineral Street.

15.     On February 19, 2023, at approximately 6:45AM, the Milwaukee Police and Fire Departments responded to a vehicle fire at 227 East Townsend Street, Milwaukee, Wisconsin **("Location 3")**. The burned vehicle was identified as a 2020 grey Chrysler 300 with WI license plate #11294AFT (VIN # 2C3CCAGG3LH146281), which was the same vehicle rented on February 18, 2023, by M.A. from Enterprise Car Rental located 5300 South Howell Avenue in Milwaukee, Wisconsin. A 911 caller stated they observed a black male suspect standing near the vehicle within seconds of the vehicle being engulfed in flames. The black male was wearing

black clothing with a black face mask. Under these circumstances, I believe the rental car was a vehicle used in interstate commerce that was intentionally destroyed by means of fire.

16.     The (24) 9mm ammunition casings recovered from the 1727 West Mineral Street shooting scene were later examined by an ATF National Integrated Ballistic Information Network (NIBIN) Correlation Specialist who determined the 24 ammunition casings were fired from two separate firearms.  Furthermore, the NIBIN Correlation Specialist found that one of the firearms used during the 1727 West Mineral Street shooting also showed a significant correlation to a firearm used during a shooting in West Allis, Wisconsin on January 3, 2023.  The West Allis Police Department recovered (7) 9mm ammunition casings near 7527 West Becher Street, West Allis, Wisconsin **("Location 4")** following a reported shooting near that address at approximately 2:00PM on January 3, 2023 (West Allis Police Department Case #23-000288). The NIBIN correlation between the two shooting scenes and the recovered casings have not yet been confirmed by microscopic comparison, but the similarities are significant and resulted in a NIBIN Hit.

17.     On February 28, 2023, ATF interviewed C.B. and C.B. stated the party near 34th Street and Pierce Street was held inside a photography studio on the first floor of a commercial building.  C.B. used digital Google Streetview images on Your Affiant's cellphone and initially identified 3530 West Pierce Street as the building where the party was held.  Additionally, C.B. said an unknown Hispanic male traveled with C.B. and A.A. to the party.  C.B. stated the unknown Hispanic male was an associate of A.A. who they ran into earlier that same night.

18.     Also on February 28, 2023, ATF Agents canvassed the area of 3530 West Pierce Street and found that address to be a U-Haul self-storage building.  ATF Agents then contacted a remodeling construction crew that working at the commercial building located at 3600 West

Pierce Street. The construction crew stated that 3600 West Pierce Street had a photography studio on the first floor, which was unlocked and open. ATF Agent also contacted a resident at XXXX South 36th Street who had exterior surveillance cameras that faced toward the intersection of West Pierce Street and South 36th Street, and also captured the front door of 3600 West Pierce. Agents viewed the surveillance video from February 19, 2023, and observed the 2020 Chrysler 300 arrive at approximately 4:36AM and park immediately across the street from the front door of 3600 West Pierce Street. Three individuals exited the Chrysler and subsequently entered 3600 West Pierce Street. The surveillance video also captured a white Jeep SUV travel by 3600 West Pierce Street on three occasions between 4:43AM and 4:46AM. What appeared to be the same white Jeep SUV backed into the north/south alley between 3600 West Pierce Street and 3530 West Pierce Street at approximately 4:54AM. The surveillance camera showed C.B., A.A., and the unknown male exit 3600 West Pierce Street at approximately 5:17AM and walk to the Chrysler 300. A.A. had opened the driver's door and C.B. was near the middle of West Pierce Street when four suspects emerged from the area of the white Jeep SUV and appeared to point firearms at the victims at which time the victims got on the ground. The video showed suspects remove the shirt from C.B. and leave it in the road. The video further showed C.B. and A.A. were ushered by the suspects into the white Jeep SUV while the unknown third male appeared to be placed in the Chrysler 300. The white Jeep SUV then traveled south on South 36th Street followed by the Chrysler 300, which was presumably driven by a suspect.

19.     As further detailed in this affidavit, cellphone number (414) 975-7826 ["The Device"] is a cellphone number associated with Kentreal EVANS and I believe that EVANS was likely in possession of this cellphone on February 19, 2023, during the commission of a carjacking, abduction, shooting, and arson. I further believe EVANS was likely in possession of

this cellphone number during a shooting in West Allis, Wisconsin on January 3, 2023. Based on T-Mobile records, EVANS' cellphone traveled to and from the general crime locations on February 19, 2023, that appear to be consistent with the general travel of the suspect vehicles. Additionally, the following phone numbers were found in EVANS' call detail records and appear to be associates to EVANS: (414) 788-9051 [T-Mobile], (414) 526-1156 [AT&T], (414) 690-1302 [AT&T], and (414) 309-9038 [Verizon]. I further believe that the possessor of number (414) 788-9051 was likely traveling with EVANS because, according to T-Mobile records, cellphone (414) 788-9051 also traveled to and from the general crime locations on February 19, 2023, that appear to be consistent with the general travel of the suspect vehicles. I believe that there was likely a co-conspirator present at the party where the victims were carjacked and abducted on February 19, 2023, because EVANS' cellphone and phone (414) 788-9051 did not appear in the area of the carjacking until after phone number (414) 526-1156 had contact with number (414) 397-2342, which is a device that was already located at or near the party location. Additionally, number (414) 526-1156 also contacted the potential party insider after the suspect's vehicle parked outside the party location but before the carjacking. I also believe that EVANS may have been communicating with a co-conspirator around this time because he exchanged text messages with (414) 690-1302 while the suspect vehicle was driving in the area of the party location. I further believe that the possessor of (414) 309-9038 was a potential co-conspirator because that phone number called (414) 788-9051 after the carjacking and abduction and while (414) 788-9051 was located in the area of the shooting just before the shooting. Because I believe there was likely at least one co-conspirator at the party, in addition to the suspects leaving the carjacking in two separate vehicles, I further believe that all calls or text messages between approximately 4:30AM – 7:00AM on February 19, 2023, related to the

aforementioned numbers will contain evidence of a crime. The Device was recovered on March 14, 2023, and EVANS' fingerprints were found on The Device. Although investigators are not certain The Device is the same device suspected to have been possessed by EVANS on February 19, 2023, I believe it is probably because EVANS was ultimately arrested on March 27, 2023, while in possession of a different cellphone number.

20. Additionally, law enforcement previously obtained call detail records for The Device, believed to be (414) 975-7826, and the records showed that The Device was active until at least February 21, 2023, which was the last date of the previous request.

21. On March 9, 2023, Your Affiant received records from T-Mobile related to Federal search warrant #23-M-303. The records included Timing advance "True Call" data related to devices that were within the vicinity of the four aforementioned crime locations in Milwaukee, those being 3600 W. Pierce Street (Location 2), 1727 W. Mineral Street (Location 1), 227 East Townsend Street (Location 3), and the West Allis shooting location at 7527 West Becher Street (Location 4). A member of the FBI Cellular Analysis Survey Team (CAST) later utilized software to analyze the T-Mobile data in an attempt to identify cellular devices that were within the vicinity of at least two of the four crime locations at or near the time of the crimes. Location #4 was a crime scene separated from the other locations by considerable distance and occurred on a different date than the other crimes. For this reason, the FBI initially focused the query of T-Mobile data toward identifying any potential common cellular devices that were found to be within the vicinity of Location #4 as well as being present near any of the other three crime locations. Location #3 was a crime scene also separated from the other locations by considerable distance. Therefore, the FBI focused a query of the data toward identifying potential common cellular devices that were found within the vicinity of Location #3 as well as

being present near any of the other three crime locations. Based on the aforementioned query of T-Mobile data, the FBI identified the following six cellular devices:

(1) IMSI #310260662247705 was found to be present near crime locations #1, #2 and #4
(2) IMSI #310260263161569 was found to be present near crime locations #1 and #4
(3) IMSI #310260918216306 was found to be present near crime locations #1 and #4
(4) IMSI #310260700564993 was found to be present near crime locations #1 and #4
(5) IMSI #310260560070110 was found to be present near crime locations #2 and #3
(6) IMSI #310260057684411 was found to be present near crime locations #2 and #3

22.　　There were four common IMSI numbers between the shooting scene in West Allis on January 3, 2023, and the shooting scene on West Mineral Street in Milwaukee on February 19, 2023, which is consistent with the number of suspects (4) that witnesses stated were at the West Mineral Street shooting.

23.　　Additionally, the two common IMSI numbers found to be near the carjacking location and the vehicle arson location is consistent with the number of occupants (2) observed getting into the Chrysler 300 at the carjacking location.

24.　　Your Affiant obtained a Federal search warrant (23-M-332) for additional timing advance data and subscriber information related to the above six listed IMSI numbers. Upon receipt of the additional data from T-Mobile (ATF Item #12) on March 29, 2023, Your Affiant was able to determine that above listed IMSI #2-6 were not likely suspect devices. Specifically, IMSI #2,3,4 and 6 were reportedly in other locations that were not within 100 meters of 3600 West Pierce Street on February 19, 2023 between 4:54AM – 5:18AM, when surveillance video definitely showed the suspects were in that precise area. Additionally, IMSI #5 did not show movement from the area until approximately 5:35AM on February 19, 2023, which is inconsistent with the known movement of the suspects.

25.     The additional records obtained related to IMSI #310260662247705 showed that this IMSI locations and movements appeared to be consistent with those of the suspect vehicle on February 19, 2023.

26.     IMSI #310260662247705 was a cellular device assigned phone number (414) 975-7826 during the timeframe requested in the search warrant – January 3, 2023; and February 18-21, 2023. The account for (414) 975-7826 is listed to KENTREAL EVANS at 3618 North 14th Street, Milwaukee, WI 53206 with an activation date of November 29, 2022. According to an email received from a T-Mobile Subpoena Compliance Specialist Fara Julien, the IMSI # associated with phone number (414) 975-7826 changed sometime after February 21, 2023, which is consistent with the user changing cellphone devices.

27.     A review of the T-Mobile timing advance data for (414) 975-7826 for January 3, 2023, showed that this cellphone device was in the area of South 76th Street and West Becher Street in West Allis at or near the time of a reported shooting on that date at approximately 2:00PM. The recorded movement of cellphone number (414) 975-7826 showed it arrived in the shooting area between 1:58-1:59PM and then traveled away from that area.

28.     A review of the T-Mobile timing advance data for (414) 975-7826 for February 19, 2023, showed that this cellular device was in the area of 3600 West Pierce Street, Milwaukee, Wisconsin from approximately 4:42AM to approximately 5:19AM, when it moved away from that area. Specifically, the timing advance data estimated this IMSI # was in close proximity to 3600 West Pierce Street from approximately 4:57AM until the IMIS# appeared to move from the area at 5:19AM. T-Mobile placed estimated locations for

this IMIS# to be near where the suspect white Jeep SUV was parked at the time of the robbery.

29.     After cellphone (414) 975-7826 left the area of 3600 West Pierce Street, it traveled briefly to the north side of I-94 and then traveled to the southside of I-94. According to T-Mobile records, this cellphone device was reported to be at or near 1621 South 24th Street at 5:32AM and was located at or near 1900 West Bruce Street at 5:37AM. The below diagram depicts the proximity of the two aforementioned locations as they relate to the location of a shooting at 1727 West Mineral Street that was reported at approximately 5:43AM.



30.     A review of the call detail records provided by T-Mobile showed that cellphone number (414) 975-7826 had multiple contacts with cellphone number (414) 526-1156 on February 18, 2023.  Additionally, the records showed that (414) 526-1156 called (414) 975-7826 at 6:37:01AM.  According to T-Mobile cell tower dump records (ATF Item #10, Excel file 12566346), cellphone number (414) 975-7826 utilized a cellphone tower at 6:37AM that also provided coverage for the area that includes 227 East Townsend Street, which was the location of the Chrysler 300 vehicle arson.

31.     Additional review of the call detail records for (414) 975-7826 showed that this number had multiple contacts with the following phone number on February 18-19, 2023: (414) 788-9051.  The previously provided T-Mobile tower dump data identified IMSI #310260704213534 to be assigned cellphone number (414) 788-9051 (ATF Item #10, Excel file 12566307).  A review of the T-Mobile timing advance data for the area around 3600 West Pierce Street for February 19, 2023 (ATF Item #7), showed that cellphone device (414) 788-9051/ IMSI #310260704213534 was in the area of 3600 West Pierce Street, Milwaukee, Wisconsin from approximately 4:41AM to approximately 5:19AM, when it moved away from that area.  Specifically, the timing advance data estimated this IMSI# was in close proximity to 3600 West Pierce Street until the device appeared to move from the area at 5:19AM.  T-Mobile placed estimated locations for this device to be near where the suspect white Jeep SUV was parked at the time of the robbery.

32.     Further review of the T-Mobile tower dump records (ATF Item #10, Excel files 12566307 & 12566308) showed that (414) 526-1156 called (414) 788-9051 at 5:31:47AM and 5:34:26AM on February 19, 2023, while (414) 788-9051 utilized a cellphone tower that provided coverage for 1727 West Mineral Street.

33.     The call detail records for (414) 975-7826 also showed two contacts with phone number (414) 309-9038, including at 12:56AM on February 19, 2023.  The previously provided T-Mobile tower dump records (ATF Item #10, Excel file 12566307) showed that (414) 309-9038 called (414) 788-9051 at 5:31:51AM and 5:31:57AM on February 19, 2023, while (414) 788-9051 utilized a cellphone tower that provided coverage for 1727 West Mineral Street.

34.     The call detail records for (414) 975-7826 further showed two received text messages from (414) 690-1302 at 4:47AM on February 19, 2023, and one response from (414) 975-7826 to that number.

35.     T-Mobile tower dump records showed that (414) 526-1156 called (414) 397-2342 at 4:40AM and 4:57AM on February 23, 2023, while (414) 397-2342 was at or near 3600 West Pierce Street.  The IMSI # for (414) 397-2342 is 310240178106982 and T-Mobile timing advance data (ATF Item #7) estimated the location for this device to be at or near 3600 West Pierce Street.

36.     A query of the address 3618 North 14th Street, Milwaukee, Wisconsin showed a listed resident as Kentreal Tommie Lee EVANS (B/M, DOB: 5/11/2001).  EVANS is on active Wisconsin DOC supervision from a 2018 Milwaukee County felony conviction for driving a vehicle without consent, and EVANS' listed address is 3618 North 14th Street.

37.     A query of Wisconsin DOC archived inmate recorded calls showed that EVANS placed multiple calls to the following two numbers while he was incarcerated in 2022: (262) 676-8174 and (414) 369-0531.  T-Mobile call detail records for (414) 975-7826 showed multiple contacts with those same two numbers.

38.     Your Affiant reviewed Milwaukee Police Department reports regarding IR #23-057-0088.  The following is a summary of those reports:

39.     The Milwaukee Police Department investigated a report of a shooting that occurred near 2967 North 57th Street in Milwaukee at approximately 1:30AM on February 26, 2023.  R.Y.W. reported that she had attended a party on that date and was dropped off at her vehicle which was parked near 2967 North 57th Street.  When she arrived at her parked vehicle, R.Y.W. stated she observed her boyfriend, Kentreal EVANS (DOB:5/11/XXXX) standing next

to a vehicle with a handgun in his hand, pointing at the ground.  R.Y.W. further said she got into

her vehicle and began to drive away when she heard gunshots and her vehicle was struck by a

bullet.  The Milwaukee Police Department subsequently recovered three fired 9mm casings from

the shooting scene near 2967 North 57th Street.

40.     Your Affiant also reviewed Milwaukee Police Department reports regarding IR

#23-073-0106 and IR #23-073-0129, which involved the same stolen 2016 Honda Civic sedan.

The following is a summary of those reports:

41.     The Milwaukee Police Department responded to a shooting near the intersection

of South 2nd Street and National Avenue that occurred at approximately 3:17PM on March 14,

2023.  The investigation revealed that L.L.W. had been shot in his neck, lip, arm, and leg.

Review of surveillance video showed that the shots were fired at L.L.W. from two suspect

vehicles: a BMW-5 and a gray Honda Civic bearing WI plate #APJ2292, which had previously

been reported stolen.  The Milwaukee Police Department recovered multiple fired 9mm casings

at the shooting scene.

42.     The Milwaukee Police Department subsequently issued a Be-On-the-Look-Out

(BOLO) for the Honda Civic and the Honda Civic was later observed on this same date at

approximately 5:50PM.  A marked police squad car attempted to traffic stop the Honda Civic but

the car sped away from officers and a pursuit began.  The Honda Civic was observed as it

stopped in the alley behind 3976 North 27th Street.  The driver exited the vehicle wearing an

orange neon hoodie, blue jeans, and facemask, and he fled on foot.  The driver was not located at

the scene but the orange hoodie and facemask were recovered from the gangway of 3978 North

27th Street.  The front passenger also exited the Honda Civic and fled on foot but was

apprehended after he had scaled a nearby fence.  The front passenger was identified as Levardis

A. DOTSON (B/M, DOB: 8/05/XXXX).  Review of officer worn body cameras showed that DOTSON was holding a firearm before dropping the firearm as he climbed over the fence.  The firearm dropped by DOTSON was found to be a Glock model 43 9mm pistol with S/N BSAF716, which was reported as a stolen firearm.  The Milwaukee Police Department located two additional stolen firearms on the ground near the Honda Civic: a Glock model 22 .40 caliber pistol with S/N LXP195 that also had a switch attached, and a Glock model 43 9mm pistol with S/N BLLS523.

43.　　At the time of his arrest, DOTSON had the following drugs on his person: approximately 2.35 grams of suspected crack cocaine and approximately 2.71 grams of suspected meth.

44.　　A criminal history query of DOTSON showed he had a 2017 felony conviction in Milwaukee County for 2nd degree reckless injury and driving without consent (2017CF004542). Additionally, DOTSON has an open felony case in Milwaukee County for unlawful possession of a firearm (2021CF004148).

45.　　The stolen 2016 Honda Civic was subsequently towed to the Milwaukee Police Department secure impound lot and searched. During the search, investigators located a black Apple iPhone (MPD Inventory #23008565/1) between the center console and driver seat. Fingerprints located on that cellphone were later matched to fingerprints on file for Kentreal EVANS (B/M, DOB: 5/11/XXXX).

46.　　On March 18, 2023, the Milwaukee Police Department located an abandoned 2022 gray BMW 5 located behind the vacant residence at 3633 North 13th Street.  The BMW had a bullet hole in it and showed the VIN #5UXCR6C05N9N31925, which listed to a stolen

vehicle. The BMW was subsequently searched and the following was located: clear plastic bags, two digital scales, a Glock magazine, and (8) fired round of .223 ammunition.

47.     The following individuals' fingerprints were found to be on the BMW: Khary J. TOWNSEND (B/M, DOB: 11/19/XXXX), Jaylin T. Hardwrict (B/M, DOB: 10/12/XXXX), and Sean Z. Colon (B/M, DOB: 12/04/XXXX).

48.     On March 27, 2023, the Milwaukee Police Department observed a stolen vehicle that was being driven recklessly (MPD case #230860110). The vehicle refused to stop and a law enforcement pursuit ensued. The driver and sole occupant of the stolen vehicle fired shots at officers during the pursuit. Police officers subsequently apprehended the driver and identified him as Kentreal EVANS. EVANS was found to be in possession of a cellphone at the time of his arrest on March 27, 2023, with suspected phone number (414) 628-9558. Investigators also located a 9mm pistol inside the stolen vehicle. EVANS is in custody and has been charged with numerous violations of Wisconsin criminal statutes for the events that occurred on March 27, 2023.

49.     On April 3, 2023, Your Affiant took custody of the Apple iPhone "The Device" (MPD Inventory ##23008565/1) and inventoried The Device as ATF Item #16.

50.     Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

51.     Based on my training and experience, individuals carry their cellular phones on their person or in a very close vicinity whether it is day or night. Further, most individuals have

their own cellular phones, so it is likely the subject(s) cellular phone is using and/or registering with the cellular tower providing service in the general geographic area of the crime.

## REQUEST FOR SEARCH WARRANT

52.     The facts set forth above show that there is probable cause to believe that the records and other information described in Attachment A and Attachment B will contain evidence of federal crimes, including violations of Title 18 U.S.C. § 2119 (carjacking), Title 18 U.S.C. § 924(c) (use of a firearm during the commission of a violent crime), Title 18 U.S.C. §§ 844(i) (use of fire to damage property affecting interstate commerce), and Title 18 U.S.C. §§ 844(h) (use of fire in furtherance of a federal felony) have been committed.

53.     As further set forth in Attachment B, your affiant is requesting subscriber/call detail information and historical location data (including cell-site data) maintained by the Service Provider for the Target Cell Phone listed in Attachment A for the date range from January 1, 2023 to March 14, 2023.

54.     Further, call detail records for the Target Cell Phones will assist investigators in documenting communications between Kentreal EVANS and potential accomplices or co-conspirators during the time period of the above-described violations, rule out possible suspects during the time period of the above described violations, and may reveal additional investigative leads or suspects.

55.     In my training and experience, I have learned that the Service Provider listed in Attachment A is a wireless provider that provides cellular telephone access to the general public. I also know that providers of cellular telephone service have technical capabilities that allow them to collect and generate information about the locations of the cellular telephones to which they provide service, including cell-site data, also known as "tower/face information" or "cell

tower/sector records."  Cell-site data identifies the "cell towers" (i.e., antenna towers covering specific geographic areas) that received a radio signal from the cellular telephone and, in some cases, the "sector" (i.e., faces of the towers) to which the telephone connected.  These towers are often a half-mile or more apart, even in urban areas, and can be 10 or more miles apart in rural areas.  Furthermore, the tower closest to a wireless device does not necessarily serve every call made to or from that device.  Accordingly, cell-site data provides an approximate location of the cellular telephone but is typically less precise than other types of location information, such as E-911 Phase II data or Global Positioning Device ("GPS") data.

56.     Based on my training and experience, I know that wireless providers can collect cell-site data about the Target Cell Phones listed in Attachment A.  I also know that the Service Provider typically collects and retains cell-site data pertaining to cellular phones to which it provides service in its normal course of business in order to use this information for various business-related purposes.

57.     Based on my training and experience, I know that the Service Provider also collects more precise historical location information associated with cellular phones, which may be referred to as Per Call Measurement Data (PCMD), Range to Tower or Real-Time Tool (RTT) data, NELOS records, or Timing Advance Data (TrueCall).  This data uses GPS or other technology to estimate an approximate location range of a cellular phone that is more precise than typical cell-site data.

58.     Based on my training and experience, I know that wireless providers typically collect and retain information about their subscribers in their normal course of business.  This information can include basic personal information about the subscriber, such as name and address, and the method(s) of payment (such as credit card account number) provided by the subscriber to

pay for wireless telephone service. I also know that wireless providers typically collect and retain information about their subscribers' use of the wireless service, such as records about calls or other communications sent or received by a particular phone and other transactional records, in their normal course of business. In my training and experience, this information may constitute evidence of the crimes under investigation because the information can be used to identify the Target Cell Phone's user or users and may assist in the identification of co-conspirators and/or victims.

## AUTHORIZATION REQUEST

59.     Based on the foregoing, I request that the Court issue the proposed search warrant, pursuant to 18 U.S.C. § 2703(c) and Federal Rule of Criminal Procedure 41.

60.     I further request that the Court direct the Service Provider to disclose to the government any information described in Section I of Attachment B that is within its possession, custody, or control. Because the warrant will be served electronically on the Service Provider, who will then compile the requested records at a time convenient to it, reasonable cause exists to permit the execution of the requested warrant at any time in the day or night.

**ATTACHMENT A**

**Property to Be Searched**

This warrant applies to records and information associated with the cellular telephone assigned call numbers: (the "Target Cell Phone"):  414-788-9051 and 414-397-2342. These records are stored at premises-controlled T-Mobile Wireless ("Service Provider") a wireless telephone service provider headquartered in Bellevue, Washington and Overland Park, Kansas.

# ATTACHMENT B

## Particular Things to be Seized

## I.      Information To Be Disclosed by the Provider

For the time period from January 1, 2023 to March 14, 2023, the Provider is required to disclose the following records and other information, if available, to the United States for the Account listed Attachment A:

**A.      Subscriber Information and Call Detail Records:**  The following information about the customers or subscribers of the Account listed Attachment A:

1.      Subscriber/customer names (including usernames and screen names);

2.      Subscriber/customer addresses (including mailing addresses, residential addresses, business addresses, and e-mail addresses);

3.      Local and long-distance call detail and tolls records for the Account;

4.      Records of session times and durations, and the temporarily assigned network addresses (such as Internet Protocol ("IP") addresses) associated with those sessions;

5.      Length of service (including start date) and types of service utilized;

6.      Telephone or instrument numbers (including MAC addresses, Electronic Serial Numbers ("ESN"), Mobile Electronic Identity Numbers ("MEIN"), Mobile Equipment Identifier ("MEID"), Mobile Identification Numbers ("MIN"), Subscriber Identity Modules ("SIM"), Mobile Subscriber Integrated Services Digital Network Number ("MSISDN"), International Mobile Subscriber Identifiers ("IMSI"), or International Mobile Equipment Identities ("IMEI"));

7.      Other subscriber numbers or identities (including the registration Internet Protocol ("IP") address); and

8.      Means and source of payment for such service (including any credit card or bank account number) and billing records.

**B.** **Cell-Site/Tower Records:** All records and other information (not including the contents of communications) relating to wire and electronic communications sent or received by the Account listed in Attachment A, including:

1. Records of user activity for each connection made to or from the Account, including log files; text messaging logs; the date, time, length, and method of connections; data transfer volume; usernames; and source and destination Internet Protocol addresses (IPV6 data records);

2. Information about each communication sent or received by the Account, including the date and time of the communication, the method of communication, and the source and destination of the communication (such as the source and destination telephone numbers, email addresses, and IP addresses); and

3. All data regarding the cell tower and antenna face (also known as "sectors") through which the communications were sent and received;

4. All historical GPS or other precision location information associated with the Account listed in Attachment A, including Per Call Measurement Data (PCMD), Range to Tower/Real-Time Tool (RTT) data, NELOS records, and Timing Advance Data (TrueCall)).

## II. Information to be Seized by the Government

All information described above in Section I that constitutes evidence of the violation of federal law, including, Title 21 U.S.C. § 841(a)(1) (distribute a controlled substances), Title 18 U.S.C. § 844(h) (use of fire in furtherance of a federal felony) and Title 18 U.S.C. § 844(n) (conspiracy to use fire in furtherance of a federal felony) and Title 18 United State Code Section 1512(c)(2) (statements meant to obstruct, influence or impede an investigation being conducted by the ATF).